## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **UNITED STATES OF AMERICA,** **Plaintiff** | : **CRIMINAL NO. 16-155 (JAM)** |
| | : |
| **V.** | : |
| | : |
| **ERIC BOONE,** **Defendant** | : **SEPTEMBER 11, 2017** |
| | : |
| | : |

### ERIC BOONE'S SENTENCING MEMORANDUM

The Defendant, ERIC BOONE respectfully submits this memorandum in accordance with Local Rule 32(o) in support of the imposition of a sentence "sufficient but not greater than necessary" at the Defendant's Sentencing Hearing scheduled to take place on September 24, 2017.

### I. INTRODUCTION

Mr. Boone comes before this Honorable Court having expressed full responsibility for his actions, genuine remorse for his role in the offense, and he has served over a year in pretrial detention for what he has done. In the following memorandum, we will present a number of factors for the Court's consideration in imposing a sentence sufficient, but not greater than necessary to comply with the purposes of sentencing, including Mr. Boone's uniquely difficult upbringing in a single parent household, and his present commitment to overcoming his addictions and becoming a good family member, a productive member of society, and an individual that his late mother would respect and admire. In the present case, while Mr. Boone's dated prior criminal history of non-violent drug offenses and alcohol related motor

vehicle violations places him in a higher Criminal History than category one, the defendant submits he is an individual who falls outside the heartland of what the Guidelines envision for an individual at Criminal History II, and he would ask that this Court consider his sentence in relation that which would be calculated under the guidelines if Mr. Boone had been eligible and availed himself of the variety of other programs available to most drug defendants, such as the Safety Valve in Federal Court and CADAC/ Drug Education and the various other State programs that were not offered to Mr. Boone.

Based on the individualized factors of his case and the Court's discretion, Mr. Boone asks that the Court sentence him to a period of time less than the twenty-seven to thirty-three (27 – 33) month term of incarceration suggested by a rigid guideline analysis. A sentence utilizing a more just 1:1 cocaine base/cocaine ratio would yield a ten to sixteen (10-16) month term, as set forth in paragraph 95 of the presentence report.  Such a sentencing range would be reasonable under the sentencing standards set forth in 18 U.S.C. §3553(a) and would satisfy the Second Circuit's recognition of imposing "individualized justice"; United States v. Crosby, 397 F.3d 114 (2d Cir. 2005), abrogated on other grounds, United States v. Fagans, 406 F.3d 138, 142 (2d Cir. 2005); as well as the statutory mandate that a sentence be sufficient, but not greater than necessary to comply with the purposes of sentencing. The defendant urges, for the reasons contained herein, that a downward departure from the guideline calculation found paragraph in the PSR is warranted; it would result in a sentence that reflects the seriousness of his offense, thus will offer continued rehabilitation, and would be a sentence that will deter future misconduct

and it would be a sentence that comports with all the statutory and other factors that guide sentencing decisions.

## II. SENTENCING CONSIDERATIONS

Mr. Boone is before the Court for sentencing pursuant to the United States Sentencing Guidelines, ("the Guidelines"), that have been rendered advisory under the Supreme Court's decision in <u>United States v. Booker</u>, 125 S.Ct. 738 (2005). After <u>Booker</u>, the Sentencing Reform Act ("SRA") requires the sentencing court to regard the guideline ranges as one of many factors to consider in determining a sentence. Under <u>Booker</u> and <u>Crosby</u> 397 F.3d 103 (2nd Cir. 2005.), the factors set forth in 18 U.S.C.§ 3553(a), including the sentencing guidelines, should each be considered by the court. No one factor in § 3553(a) is elevated to a presumptively controlling weight. The guidelines are more than "a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge." <u>Crosby</u>, 397 at 113-114. However, they are not the controlling factor – more important than all – or any – of the other factors listed in 3553(a). After considering the guidelines, the sentencing judge may impose either a guideline sentence, including one taking into account the departures or a non-guideline sentence. Id. at 113.

This District court remains charged under the SRA with the duty to "impose a sentence that is sufficient, but not greater than necessary", to comply with the sentencing purposes and to "consider the nature and circumstances of the events and the history and characteristics of the defendant." 18 U.S.C. § 3553 (a)(1).

Because this Court is not bound by the Guidelines but must "consult" them and "take them into account when sentencing," Booker at 767, this Court has the discretion to sentence anywhere within the range offered by the statute. The Court must also take into consideration the plea agreement between the parties, however, the court's reasonableness in the imposition of sentence will be guided by the factors set out in 18 U.S.C. § 3553(a), the Guidelines, and the sentence imposed will be reviewed under a standard of reasonableness.

The purpose of this memorandum is to submit several options the Court may consider in order to sentence Mr. Boone, using its discretion, for a lesser period of imprisonment, than called for by the strict application of the interpretations of the Guidelines as presented in the plea agreement by the government and/or the strict application of the "Guideline Calculations" discussed in the Presentence Report at paragraph 22. At this sentencing, the defendant understands that the District Court has the discretion to sentence anywhere in the range authorized by 21 U.S.C. §§ 841(a)(1) 841(b)(1)(C) & 846. There is no mandatory minimum for the quantity involved in Mr. Boone's offense of conviction.

### III.    COCAINE BASE/ POWDER COCAINE RATIO

The defendant advocates a 1:1 powder cocaine to crack cocaine ratio in determining his case. The Government opposes the 1:1 ratio, and instead advocates a formula converting cocaine base to marijuana to yield a guideline based on 61,765 grams of marijuana, finding a total offense level of 20.

With regard to the 1:1 ratio, Kimbrough v. United States, 552 U.S.85 (2007)

stands for the proposition that the sentencing court has discretion to deviate from the Guidelines- recommended range based on the Court's disagreement with the policy judgments evinced in a particular guideline. " United States v Carr, 557 F.3d 93, 106 (2nd Cir. 2009) In Kimbrough, the Supreme Court held that "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence "greater than necessary" to achieve § 3553(a)'s purposes, even in the mine-run case."552 U.S. at 110. Subsequently in United States v Regalado, 518 F, 3d 143, 149 (2d Cir. 2008).

The Sentencing Commission has acknowledged in a number of recent reports that the unequal crack to powder ratio results in people arrested with crack punished much more harshly than those arrested with powder. The treatment of elevated ratios for crack to powder cocaine creates unwarranted disparity in itself. See United States v. Smith, 359 F. Supp. 771, 780 (E. D. Wisc. 2005) (Adelman, J) (Concluding after reviewing commissions' findings, that none of the previously offered reasons for the 100:1 ratio withstand scrutiny.")  See also: United States v. Thomas, 360 F. Supp. 2d 238, (D. Mass. 2005) (Ponsor, J.); Simon v. United States, 361 F.Supp2d 35 (S.D.N.Y. 2005) (Sifton, J.).  The Commission's conclusion implicates several of the § 3553(a)(2) sentencing factors in ways that strongly suggest a sentence below that recommended by the advisory guidelines is appropriate.

The chief directive of § 3553(a) is that the court "shall impose a sentence sufficient, but not greater than necessary" to comply with the purposes identified by Congress in § 3553(a)(2). Under § 3553(a)(2)(A), a sentence should reflect the seriousness of the offense. The Commission's conclusion that the 100 to 1 ratio is

unjustified means that the crack penalties overstate the seriousness of crack offenses. The Commission itself has debunked virtually all of the theories that led to draconian crack penalties. Early rationales for the comparatively tougher crack penalties included that crack is more addictive than powder cocaine, that prenatal crack exposure causes more harm than exposure to other substances, and that crack is more likely to involve minors and violence. *See* Fifteen Year Report at 93–132. After a thorough review, the Sentencing Commission has concluded that these rationales simply do not justify the 100-to-1 ratio. *See id*. at 94 (addictive nature of crack compared to powder cocaine has been overstated, and "does not appear to warrant the 100-to-1 drug quantity ratio").

The Commission has also found that there is no scientific validity to the theory that a baby exposed prenatally to crack will suffer more harm than a baby exposed prenatally to powder cocaine. *Id*. at 95. Similarly, the Commission has discounted the idea that crack offense are more likely to involve violence, *see id*. at 100 ("recent data indicate that significantly less trafficking-related violence or systemic violence, as measured by weapon use . . . is associated with crack cocaine trafficking offenses than previously assumed"), or minors, *see id*. at 96 ("recent data indicate that the epidemic of crack cocaine use by youth never materialized to the extent feared."). In short, the Commission's work has shown that the offense level set by the advisory guidelines on the discredited theories of crack as a particular scourge do not accurately reflect the seriousness of the offense.

The Court is required to avoid unwarranted disparities in imposing a sentence. *See* 18 U.S.C. § 3553(a)(6). It is also required to impose a sentence that will promote respect for the law. *See* 18 U.S.C. § 3553(a)(2)(A). To apply an unequal powder to crack ratio

undermines both of these requirements. Crack cocaine offenses and powder cocaine offenses are violations of the same drug laws. They are therefore similar conduct. Yet an unjustified ratio produces vastly different sentences for violators of identical laws. The difference must be unwarranted as the Commission has acknowledged that the 100 to 1 ratio is unwarranted.

Improperly elevated crack sentences have been imposed disproportionately on minorities, including African-Americans. See, e.g., U.S. Sentencing Commission, *2002 Sourcebook of Federal Sentencing Statistics*, Table 34, Race of Drug Offenses for Each Drug Type (81.4% of persons sentenced for crack offenses are black, whereas only 30.9% of persons sentenced for powder offenses are black) (Available at http://www.ussc.gov/ANNRPT/2002/SBTOC02.htm); see also 2002 Report at 102-03; *see also Smith*, 359 F.Supp.2d 771, 780 (noting that "the unjustifiably harsh crack penalties disproportionately impact on black defendants"). Perceived improper racial disparity fosters disrespect for and lack of confidence in the criminal justice system among those very groups that Congress intended would benefit from the heightened penalties for crack cocaine." 2002 Report at 103; see also Fifteen Year Report at 113, 115, 117, 131-132.

In addition, the 100-to-1 ratio fails to promote respect for the law because it does not does not mesh with public perception of the relative seriousness of the two types of cocaine offenses. As the Sentencing Commission found when it commissioned a survey ten years ago, "the general public does not make important distinctions between trafficking in heroin, powder cocaine and crack cocaine . . . ." U.S. Sentencing Commission, Public Opinion on Sentencing Federal Crimes at 86 (Oct. 1995) (Available

at http://www.ussc.gov/nss/jp_exsum.htm); *see also* <u>United States v. Wilson</u>, 350 F.

Supp. 2d 910, 918 (D. Utah 2005) (noting the public's failure "to support the Guidelines'

differentially harsh treatment of distribution of crack cocaine (as compared to powder

cocaine)").  Because of this discordance in public perception, applying the 100-to-1 ratio

fails to promote respect for the law.

"Given the Draconian punishment associated with cocaine base, to follow the

guideline range for this case would go beyond what is needed to serve the purpose of

sentencing . . . .Respect for the law doesn't always mean sending people to prison for as

long as you can"  <u>United States v. Mulvey</u>, No 03-10075-001 (C.D. Ill. Feb. 11, 2005)

(explaining sentence below guideline range for crack offense).  Eric Boone respectfully

requests that this Honorable Court make the starting point for any calculation of his

advisory guideline range based on the 1:1 ratio in order to eliminate the unwarranted

disparity, and unduly harsh guideline enhancement inherent in the unequal treatment of

cocaine powder and cocaine base.  *See* 18 U.S.C. § 3553(a)(6); USSC Sourcebook(2002)

at table 34.

In addition to general acceptance in Connecticut Federal Sentencing, the cases in

other circuits adopting the 1:1 cocaine/ cocaine base ratio are legion: <u>United States v.</u>

<u>Wigham,</u> 754 F.Supp. 2d 230 (D. Mass. 2010); <u>United States v. Williams</u>, 2010 U.S.

Dist. LEXIS 30810 (S. D. Ill. Mar, 30, 2010); <u>United States v. Greer</u>, 2010 U. S. Dist.

LEXIS 30887 (E.D. Tex Mar. 30, 2010); <u>United States v Gully</u>, 619 F. Supp. 2d 633

(N.D. Iowa 2009); <u>United States v Lewis</u>, 623 F. Supp. 2d 42,46 (D.D.C. 2009); <u>United</u>

<u>States v Medina</u>, 2009 U.S. Dist LEXIS 82900 (S.D. Cal. Sept 11, 2009); <u>United States v</u>

<u>Owens</u>, 2009 U.S. Dist. LEXIS 70722, 2009 WL 2485842 (W.D.Pa. Aug. 12, 2009);

United States v Luck, 2009 U.S.Dist. LEXIS 71237, 2009 WL 2462192 (W.D.Va. Aug.10, 2009); United States v. Carter, 2009 U.S. Dist. LEXIS 73094 (W.D. Va. Aug 18, 2009); Henderson v. United States, 2009 U.S.Dist. LEXIS 83208 (E.D. La. Sept. 10, 2009)

## IV. THE OFFENSE OF CONVICTION

Mr. Boone was charged with Conspiracy to Possess with intent to distribute a detectable amount of a mixture and substance containing cocaine, in violation of 21 U.S.C §§ 841(a)(1), 841(b)(1)(C) and 846. He was arrested for the instant offense on August 26, 2016. Mr. Boone has been detained at the Donald W. Eyatt Detention Center in Central Falls, R. I. diring the pendency of this Federal Case. Mr. Boone pled guilty to count one of the indictment in this case. The drug amount that the defense agreed that the court adopt was at least 50 but less than 100 grams of powder cocaine, and the guidelines calculations involved in the consideration of a one-to-one ratio of crack cocaine/cocaine place him in a range with a Base Offense Level (BOL) of 14: 2D1.1(c)(14) two levels being subtracted for acceptance of responsibility resulting in a total offense level of 12 and a Criminal History Category of II, yielding an advisory guideline range of 10 to 16 months of imprisonment. It is notable that the toxicology report that evaluated the controlled substances seized in this case denoted a total drug quantity of 44.034 grams based of two items of evidence of 41.235 and 2.799 grams, respectively.

After a careful evaluation of the case, the facts and circumstances of Mr. Boone's participation in the offense conduct that suggests that the conduct in this case was an isolated act, and not part of the overall larger ongoing conspiracy involving three other codefendants, unknown to Mr. Boone. The focus of the investigation that led to this

defendant's arrest was the investigation of narcotics trafficking by a codefendant identified as M.H, and it was a conspiracy that the government had been conducting that focused on another individual, P.M. wherein the Government had been authorized to intercept P.M.'s wire and electronic communication, including text messages. The defendant, on all accounts, was a lower level participant in the charged conspiracy and accordingly, the Defense would respectfully recommend a sentence on the lower end of the applicable advisory guideline range.

## V. ERIC BOONE'S PERSONAL HISTORY

As set forth in USPO Lauren Harte's comprehensive presentence report in its personal and family data, Eric Boone was born on June 19, 1969. He is a 48 year African American male, with a high school education and continuing education certificates in real estate and the culinary arts. Despite a substance abuse history, Mr. Boone has never received drug abuse education, but he did successfully participate in AA and alcohol abuse treatment. Mr. Boone believes that abstinence from drugs and alcohol is a positive personal commitment, and he recognizes the problems that their abuse has generated for him in the past, including the conduct that underlies this offense.

Mr. Boone has a long history of close association with his family members, particularly his late mother, Dorothy Boone, a nurse by profession who later retired as a career employee, an administrative assistant, with the Commission on Human Rights and Opportunities (CHRO) in Norwich, Connecticut. The defendant, along with his older brother Anthony, was raised by his mother Dorothy Boone, in Norwich, Connecticut after his mother had relocated from Mississippi. The family moved around several times

before settling in Norwich, where Eric's mother became a career clerk with the CHRO. The PSR details the family evolution and their various moves around Connecticut during Eric's developmental years. Although his physical needs were met, the life in a single parent home with a working mother striving to meet the needs of two challenging boys was not easy. Despite these obstacles Eric graduated from high school and continued his education at a community college and with two vocational certificate programs.

## VI.     SENTENCING LAW APPLICATION

In this sentencing, the Court must interpret the Federal Drug Distribution Statute, 21 U.S.C. § 841 and Eric Boone's culpability among the individuals accused of participation in the conspiracy charged in the indictment.

Section 841 creates a staircase of sentences, with increases for individuals caught with substantial quantities that elevate to mandatory minima that increase from five to ten, and on to twenty years. Where the defendant is situated on the sentencing staircase largely depends on the type and quantity of drugs involved, and whether death or bodily injury resulted from the offense.

In the instant case, there is no mandatory minimum based on a finding of a specific quantity and there was absolutely no violence in the offense. Quantity can be "a rough measure of an offender's culpability to the extent it reflects the offender's position within the drug distribution network." Paul J. Hofer and Mark H. Allenbaugh, The Reason Behind the Rules: Finding and Using the Philosophy of the Federal Sentencing Guidelines, 40 Am. Crim. L. Rev. 19, 71 (2003). As Hofer and Allenbaugh noted, the legislation appears to reflect the principle that "leaders of drug distribution operations will be linked to large amounts, while underlings will be linked only to

smaller amounts reflecting their position as wholesale distributor, street-level retail dealer, etc." Id. at 71-72. The legislative history of the Anti-Drug Abuse Act of 1986, which included substantial amendments to 841(b), describes the quantities tied to the ten year mandatory minimum penalties as typical of "major traffickers, the manufacturers or the heads of organizations, who are responsible for creating and delivering very large quantities," while the quantities tied to five year minimum penalties, as typical of "managers of the retail traffic, the person who is filling the bags...in substantial street quantities." H.R. Rep. No. 99-845, at 11-12 (1986). With regard to Eric Boone's position relative to his culpability, it is clear that he falls into none of these elevated categories as he was not a leader, manager or manufacturer, but rather, on all accounts, a much lower-level participant.

The Guidelines are no longer binding, and this Court need not justify a sentence outside of them by citing factors that take the case outside the heartland, rather, this Court is free to disagree in individual cases and, in the exercise of its discretion, with the actual Guideline range imposed, so long as the ultimate sentence is reasonable and are supported by the reasons tied to the 3553(a) factors.

The overriding principle and basic mandate of Section 3553(a) requires the District Court to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in Section 3553(a)(2): (a) retribution (to reflect seriousness of the offense, to promote respect for the law, and to provide just punishment); (b) deterrence; (c) incapacitation (to protect the public from further crimes); and (d) rehabilitation (to provide the defendant with needed

educational or vocational training, medical care, or other correctional treatment in the most effective manner.

## VII. FACTORS TO BE CONSIDERED IN IMPOSING A "REASONABLE" AND "INDIVIDUALIZED" SENTENCE PURSUANT TO 18 U.S.C. §3553(a)

Title 18 U.S.C.§3553(a) provides the framework within which a sentencing judge must determine the appropriate sentence for a defendant:

<u>Factors to be considered in imposing sentence</u>.   The Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection.   The court, in determining the particular sentence to be imposed, shall consider:

(1)    the nature and circumstances of the offense, and history and circumstances and characteristics of the defendant;

(2)    the need for sentence imposed –

    A.    to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense;

    B.    to afford adequate deterrence for criminal conduct;

    C.    to protect the public from further crimes of the defendant; and

    D.    to provide the defendant with needed educational or vocational training, medical care, and other correctional treatment in the most effective manner.

(3)    kinds of sentences available;

(4)    the kinds of sentence and the sentencing range established for --

A. the applicable category of offense committed by the applicable category of defendant as set forth in the Guidelines...

(5) any pertinent policy statement--

A. issued by the Sentencing Commission...

(6) the need to avoid unwarranted sentence disparity with similar records who have been found guilty of similar conduct, and

(7) the need to provide restitution to any victims of the offense.

*18U.S.C. §3553(a).*

Under the traditional Guidelines system, the sentencing court was obligated to:

impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind or to a degree, not inadequately taken into consideration by the Sentencing Commission in formulating the Guidelines that should result in a sentence different from that described.

18 U.S.C.§3553(b).[1]

Twelve years ago, the Supreme Court ruled that the Guidelines' mandatory nature was unconstitutional. See United States v. Booker, 543 U.S. 220 (2005). The Court excised §3553(b) from the Guidelines' statutory scheme, holding that the Guidelines' binding authority violated a defendant's Sixth Amendment right to trial by jury. The Court held, however, that a sentencing court was still required to consider the guideline range, but it also must consider the other factors enumerated under §3553(a) when imposing a sentence. While the federal sentencing statute "requires a sentencing court to consider Guidelines ranges, ...it permits the court to tailor the sentence in light of other statutory concerns as well..." Booker, 543 U.S. at 245-46. Thus, a sentencing court must now undertake a more refined and particularized analysis:

---

[1] All references are to the United States Code refer to Title 18.

Sentencing will be harder now that it was a few months ago. District courts cannot just add up figures and pick a number with a narrow range. Rather, they must consider all of the applicable factors, listen carefully to defense and government counsel, and sentence the person before them as an individual.. *Booker* is not an invitation to do business as usual.

United States v. Ranum, 353 F. Supp. 2d 984, 987 (E.D. Wis. 2005).

Following Booker, the Second Circuit confirmed that the applicable Guidelines sentence was only one of seven factors that a sentencing court must now consider. See United States v. Crosby, 397 F.3d 103. As the Second Circuit has explained:

[S]entencing judges remain under the duty with respect to the Guidelines - - not the previously imposed duty to apply the Guidelines, but the continuing duty to 'consider' them, along with the other factors listed in section 3553(a). We have every confidence that the judges in this Circuit will do so, and that the resulting sentences will continue to substantially reduce unwarranted disparities **while now achieving somewhat more individualized justice. In short, there need be no 'fear of judging.'**

United States v. Crosby, 397 F.3d at 111-12 (emphasis added), see also United States v. Canova, 412 F.3d 331, 350 (2d Cir. 2005) (prior to Booker, sentencing courts "understandably gave predominant, indeed controlling, weight to two factors in §3553(a): the sentencing range established by the federal Sentencing Guidelines...and the pertinent policy statements of the Sentencing Commission;" now a court must comply with its statutory obligation to consider all of the factors in §3553(a)).

The United States Supreme Court in its decision regarding sentencing and the role of the Advisory Guidelines in the post-Booker realm, in Rita v. United States, 127 S.Ct. 2456 (2007), Court ruled that although a rebuttable presumption of reasonableness applies on appellate review in situations where the sentencing court has imposed a Guideline sentence, this presumption of reasonableness does not apply to the sentencing

judge, and does not require him or her to impose a sentence under the Guidelines. Id. at

2456. The Court outlined the duties of a sentencing judge:

> The sentencing judge, as a matter of process, will normally begin by
> considering the presentence report and its interpretation of the Guidelines.
> 18 U.S.C.§3553(a); Fed. Rule Crim. Proc. 32. He may hear arguments by
> prosecution or defense that the guidelines sentence should not apply,
> perhaps because (as the Guidelines themselves foresee) the case at hand
> falls outside the "heartland" to which the Commission intends individual
> Guidelines to apply, USSG§5K2.0, perhaps because the Guidelines
> sentence itself fails properly to reflect §3553(s) considerations, or perhaps
> because the case warrants a different sentence regardless. See Rule 32(f)
> Thus, the sentencing court subjects the defendant's sentence to the
> thorough adversarial testing contemplated by federal sentencing
> procedure. See Rules 32(f), (h), (i)(C) and (i)(D); see also Burns v. United
> States, 501 U.S. 129, 136, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991)
> (recognizing importance of notice and meaningful opportunity to be heard
> at sentencing). **In determining the merits of these arguments, the
> sentencing court does not enjoy the benefit of a legal presumption that
> the Guidelines sentence should apply.** Booker, 543 U.S., at 259-260.

United States v. Rita, 127 S.Ct. at 2465 (emphasis added).

The Second Circuit had previously issued similar instructions:

> First, the Guidelines are no longer mandatory. Second, the sentencing
> judge must consider the Guidelines and all of the other factors listed in
> section 3553(a). Third, consideration of the Guidelines will normally
> require determination of the applicable policy statements. Fourth, the
> sentencing judge should decide after considering the Guidelines and all the
> other factors set forth in section 3553(a), whether (i) to impose the
> sentence that would have been imposed under the Guidelines, *i.e.*, a
> sentence within the applicable Guidelines range or within permissible
> departure authority, or (ii) to impose a non-Guidelines sentence. Fifth, the
> sentencing judge is entitled to find all the facts appropriate for determining
> either a Guidelines sentence or a non-Guidelines sentence.

United States v. Crosby, 397 F.3d at 113.

Thus, while a sentencing court must consider the applicable Guidelines sentence,

there is no presumption that that sentence satisfies all of the objectives of §3553(a). In

fact, neither §3553(a) nor the majority opinions in Booker suggest that the sentencing

court should give the Guidelines any priority over the other factors listed in §3553(a).
The Guideline calculations are to be treated "as just one of a number of sentencing
factors." United States v. Ranum, 353 F. Supp. 2d at 985. Indeed, giving the Guidelines
any sort of presumptive correctness or weighted consideration would in effect resurrect
them to the level of de facto mandatory, which obviously runs afoul of Booker.. See
United States v. West, 383 F. Supp. 2d 517, 519-20 (S.D.N.Y. 2005); Simon v. United
States, 361 F. Supp. 2d 35, 40 (E.D.N.Y. 2005)(Senior Judge Sifton found that
"Guidelines are advisory and entitled to the same weight accorded to each other factor
that the Court is instructed to consider by §3553(a)".)

The Advisory Guidelines "are meant to govern typical cases." United States v.
LaBonte, 520 U.S. 751, 765 (1997). "The [Sentencing] Commission intends the
sentencing courts to treat each guideline as carving out a 'heartland,' a set of typical cases
embodying the conduct that each guideline describes." See U.S.S.G.§1A1.1 cmt. 4(b);
see also United States v. Bryson, 163 F.3d 742, 47 (2d Cir. 1998). "When a court finds
an atypical case, one to which a particular guideline linguistically applies but where
conduct significantly differs from the norm, the court may consider whether a departure
is warranted." U.S.S.G. §1A1.1, cmt 4(b). The Supreme Court has stated:

> This departure authority is important because no set of Guidelines can
> anticipate every situation. Where there exists an aggravating or mitigating
> circumstance of any kind, or to a degree, not adequately taken into
> consideration by the Sentencing Commission in formulating the
> guidelines, a judge has the authority to impose an appropriate sentence, so
> long as the sentence is within the range authorized by the statute under
> which the defendant was convicted.

United States v. Labonte, 520 U.S. at 766 (internal quotations omitted).

However, because the Guidelines are no longer binding, "courts need not justify a sentence outside of them by citing factors that take the case outside the 'heartland.' Rather, courts are free to disagree, in individual cases and in the exercise of discretion, with the actual range proposed by the guidelines, so long as the ultimate sentence is reasonable and carefully supported by the reasons tied to the §3553(a) factors." United States v. Ranum, 353 F. Supp. 2d at 987.

In the present case, the Probation Office has recognized that, due to Mr. Boone's prior record of State offenses that reflect prior substance abuse, he is treated as a Criminal History Category II under the Guidelines. PSR at ¶ 42. His Total Offense Level under the Advisory Guidelines is suggested to be a Level 20, however, the defendant submits that a lesser quantity should govern the advisory guideline calculations in his case. The defendant respectfully suggests that a 1:1 ratio should be utilized with the suspected cocaine-base recovered, and that the weight calculations be those stated in the toxicology report. If said calculations were adopted by the Court, a base offense level of 14 is calculated, and with two levels subtracted for acceptance of responsibility, the defendant arrives at level 12 with an advisory guideline imprisonment range of 10-16 months. Id. at ¶ 95.

Full consideration of the §3553(a) factors, though, do not justify removing Mr. Boone from society for a longer period of time. Instead, a longer sentence would undermine the principal goal of sentencing that a defendant should receive "just punishment." For the reasons articulated below we would respectfully submit that a non-Guidelines sentence of 10 months, or below, would be reasonable in this case and fulfill Judge Newman's recognition of imposing

"individualized justice," <u>United States v. Crosby</u>, 397 F.3d at 114, as well the statutory mandate that **"a sentence be sufficient, but not greater than necessary"** to comply with the purposes of sentencing 18 U.S.C. §3553(a).

In determining the sentence minimally sufficient to comply with the Section 3553(a)(2) purposes of sentencing, the court must consider the several factors listed in Section 3553(a); these factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the kinds of sentence available; (3) the Guidelines and policy statements issued by the Sentencing Commission, including the (the now non-mandatory) guideline range; (4) the need to avoid unwarranted sentencing disparity; and (5) the need to provide restitution where applicable. 18 U.S.C. § 3553(a)(1), (a)(3), (a)(5)-(7).

Neither the statute itself or Booker suggests that any one of the factors is to be given greater weight than any other factor, but, it is important to remember that all factors are subservient to Section 3553 (a)'s mandate to impose a sentence sufficient, but not greater than necessary to comply with the four purposes of sentencing.

## VIII.  <u>SENTENCING CONSIDERATIONS FOR ERIC BOONE</u>

Inasmuch as the Court must consider both the nature and circumstances of the offense, and the history and characteristics of the defendant, the undersigned would be remiss not to present to the Court the very outstanding personal accomplishments and close family ties and commitments characteristic of Eric Boone, which are in stark contrast to the violations of the law which bring him before the Court.  As counsel for Eric Boone, I have received many communications from his family, friends, and community members in support of Eric both about the recent death of his mother and

about his current predicament. All input regarding this defendant has been positive and all communications related that his criminal involvement in this case was most uncharacteristic.

From each of these individuals who have communicated with the undersigned, I received consistent positive feedback, especially about his commitment to his mother, which demonstrates who Eric Boone really is. These contacts have related the important traits of his Eric's character and his past vital role in family matters and in the community prior to his incarceration. Several letters are being sent to the undersigned to attach to a subsequent supplemental filing, and it is these communications, in my opinion, that are the best examples of the factors which mitigate the crime before the Court as well as the punishment that should ensue. Respectfully, counsel urges the Court to take these communications into account and to impose a minimal sentence under the Statute, which would allow Eric Boone to return to his family and to re-integrate as a contributing member of his community as soon as possible.

## IX. 18 USC §3553 FACTORS APPLIED TO MR. BOONE

The court shall impose a sentence sufficient, but not greater than necessary, and shall consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant - Mr. Boone has accepted responsibility for his participation in the conspiracy. He was charged for drug trafficking. No weapons were found in Mr.

Boone's, and there is no evidence to suggest that any violence or weapons were involved in the conspiracy. Mr. Boone did not contest the charges, and he promptly recognized his fault and responsibility, and was cooperative thereafter. Mr. Boone accepted responsibility and pled guilty on May 31, 2017, immediately after receiving the toxicology report for the drugs seized in his case.

(2) the need for the sentence imposed –

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense – The offense is a serious one. Any person who transgresses society's laws by engaging in illegal acts must face the consequences of his actions. A sentence disproportionate to the seriousness of the offense does not promote respect for the law. Mr. Boone has been incarcerated since August 26, 2016, and faces a significant sentence as per the present PSR calculations if the Court were not to consider the calculation of a guideline range in accordance with U.S. v. Kimbrough that allows a lower and a one-to-one crack cocaine/powder cocaine ratio. In accordance with Kimbrough, and utilizing a 1:1 cocaine/ cocaine base ratio, the PSR indicates at ¶ 95 that Mr. Boone's offense would merit a base offense level of 14, subtracting two levels for acceptance of responsibility, thus arriving at level 12, which at criminal history category II would produce an advisory guideline imprisonment range of 10 to 16 months. .

(B) To afford adequate deterrence to criminal conduct: the purpose of general deterrence is to discourage similar wrongdoing by others through a

reminder that the law's warnings are real, and that the grim consequences of imprisonment are likely to follow for crimes that impact the public.

General deterrence is served (beyond whether the sentence is a few months more harsh or more lenient) because it is known to others that this defendant, and those similarly situated, will be held accountable for their transgressions. This is an extraordinarily great penalty beyond what may be also measured in months in prison. If someone can be deterred, this arrest, process and sentence serves that purpose.

Mr. Boone's prior notable prior conviction for a drug offense was nearly twenty years ago, and he has been actively employed and a contributing member of society, both caring for his elderly mother, working and earning a degree in the culinary arts in the years prior to the instant arrest and conviction. The lack of serious ongoing criminal conduct is indicative that a sentence at the low end of the advisory guideline would provide adequate deterrence in this case.

At this point in time in Mr. Boone's life, having entered a plea of guilty, the question as to what is a fair and just sentence is not so much what is appropriately punitive as what are the employment opportunities and educational and/or vocational training available for Mr. Boone, who has paid his debt to society in over a year of pretrial incarceration at the Donald W. Wyatt Detention Center.

(C) to protect the public from further crimes of the defendant - Mr. Boone has expressed regret for his actions. At this time he is no longer a threat. The

public is better served via vocational training so he can be self sufficient and be of a contributing member, of service to his community.

Specific deterrence is achieved through, (1) incapacitation, (2) prosecution and (3) the social opprobrium associated with the charged criminal conduct. The defendant has a good family and he has just recently has the opportunity to gather with and meet his many close family friends who gathered at the funeral services of his mother, Dorothy Boone. Mr. Boone has learned from his mistakes and has shown in the past that he has the ability to be a valuable family member and  a productive member of society. At his family's services for Dorothy Boone, Eric had time to reflect and to gather with many friends and family members that have been positive influences in his life. Eric is committed to reuniting with these family members and friends, and to use their association as part of his ongoing resolve to remain substance and crime free, and engaged in positive and productive experiences in the future. It is highly unlikely that after his release from imprisonment, Eric Boone will engage in future criminal activity.

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. Eric has made significant educational achievements in the past. He graduated from the Norwich Free Academy in 1987 and continued with two semesters at a community college. Eric took a course in Principles and Practices of Real Estate from the Eastern Connecticut Board of Realtors, receiving his certification in 2015.  Immediately thereafter, Eric enrolled in the Lincoln

Technical Institute's Culinary Program, where he attended, with perfect attendance, and he graduated on August 20, 2016, just six days before his arrest in this case. Eric achieved a 3.96 grade point average in the culinary program. Because Eric has made substantial achievements in vocational education himself, he is ready to utilize his shills, and to become a full time employed and productive member of society.

In order to encourage Eric to become fully productive at his earliest opportunity, we seek a sentence in accordance with U.S. v. Kimbrough, 552 U.S. 25 (2007) and request this Honorable Court to sentence Mr. Boone to time served, or the lower end of the advisory guideline.

(3) the kinds of sentences available - What we seek is an adequate and just sentence. A fair sentence in this case would be one that gives effect to a 1:1 cocaine/cocaine base ratio.

(4) the kinds of sentence and the sentencing range established - The advisory guideline range is merely a guidepost, and sufficient information is on the record allowing this Honorable Court to sentence Mr. Boone taking into consideration the particular matters presented herein, and its judicial and human wisdom..

(5) any pertinent policy statement - There are pertinent policy statements that are contained in the Fair Sentencing Act and in the commission's own research (discussed above) regarding the reasoning for reducing the powder-to-crack ratios. It should be noted that Federal District Judges in the State of Connecticut have often considered and imposed a 1:1 cocaine base/cocaine ratio in sentences imposed for non-violent drug offenders.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. This should not become an issue and Defendant expects similar treatment as others appearing before this court, after having accepted responsibility for his non-violent drug offense.

(7) the need to provide restitution to any victims of the offense - Not an issue in this case.

## X. CONCLUSION AND RELIEF REQUESTED

For all the above reasons, and those to be discussed in the sentencing hearing in his case, Mr. Eric Boone respectfully requests this Honorable Court to sentence him to a sentence sufficient, but not greater than necessary in this case.

RESPECTFULLY SUBMITTED, in New London, CT on September 11, 2017.

s/ Michael R. Hasse
Michael R. Hasse ct12289
Attorney for Eric Boone
89 Hempstead Street
New London, CT 06320
Tel. (860) 444-2711
Fax: (734)448-2891
Email: hasselaw@yahoo.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 11, 2017, a copy of the foregoing Memorandum in Aid of Sentencing on behalf of the defendant Eric Boone, was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's Electronic Filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF Filing System.

s/ Michael R. Hasse
Michael R. Hasse ct12289