# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff | : CRIMINAL NO. 16-155 (JAM) : : |
| V. | : : |
| ERIC BOONE, Defendant | : NOVEMBER 21, 2017 : : |

## ERIC BOONE'S SUPPLEMENTAL SENTENCING MEMORANDUM

The Defendant, ERIC BOONE respectfully submits this supplemental memorandum in accordance with Local Rule 32(o) in support of the imposition of a sentence "sufficient but not greater than necessary" at the Defendant's Sentencing Hearing scheduled to take place on November 27, 2017, at 10:00 a.m.

Mr. Boone respectfully objects to the Government's characterization of him as a more active member of this conspiracy than he really was. Mr. Boone wholeheartedly accepts responsibility for his offense of conviction, but he does not agree with the Government's characterization that serves only to magnify and multiply what was his actual participation in the offense of conviction in this case.

### I. INTRODUCTION

Mr. Boone comes before the Court having expressed full responsibility for his actions, genuine remorse for his role in the offense, and he has served over a year in pretrial detention for what he has done. In the following reply memorandum, Mr. Boone responds to the Government's characterization of his participation in the conspiracy that is the charged offense before this Court for sentencing. Eric Boone

timely accepted responsibility for this offense, immediately after receiving the toxicology report that was appended to the defendant's plea letter.

## II. CIRCUMSTANCES OF THE ARREST

Pursuant to its terms, the reasonably forseeable quantity of drugs attributable to Mr, Boone are the two evidence submissions weighing the 'rock substance' seized from his arrest. These are weighed at 2.799 grams (15.6 grams with the tamper evident sealed plastic bag and paper towel) and 41.235 grams (49.1 grams with tamper evident sealed plastic bag, and clear plastic ziplock bag) of cocaine was the weight of the substance tested and determined to contain cocaine. The drug weight, as tested, was a total of 44.034 grams per the State of Connecticut DESPP- Division of Scientific Services Laboratory Controlled Substances Report.

The defendant notes that the Government states that a car similar to his was seen in the vicinity of a co-conspirator's residence on "multiple occasions,' however a close perscrutation of the surveillance discovery provided by the Government only cites two occasions where a silver automobile was observed in, on or about the home of the individual who Mr. Boone visited when he was subsequently arrested. These sightings were reported as July 6th and July 25th. Mr. Boone is not positively identified in the surveillance, thus it is certainly not probative of additional criminal activity or drug weight attributable to Eric Boone, nor indicative of additional participation in the charged conspiracy

# III. THE OFFENSE OF CONVICTION

Mr. Boone was charged with Conspiracy to Possess with intent to distribute a detectable amount of a mixture and substance containing cocaine, in violation of 21 U.S.C §§ 841(a)(1), 841(b)(1)(C) and 846. He was arrested for the instant offense on August 26, 2016. Mr. Boone and he has been detained at the Donald W. Wyatt Detention Center in Central Falls, R. I. during the pendency of this Federal Case. Mr. Boone pled guilty to count one of the indictment in this case, and he agreed that the court adopt a quantity of at least 50 but less than 100 grams of powder cocaine, and the guidelines calculations involved in the consideration of a one-to-one ratio of crack cocaine/cocaine place him in a range with a Base Offense Level (BOL) of 14: 2D1.1(c)(14) two levels being subtracted for acceptance of responsibility resulting in a total offense level of 12 and a Criminal History Category of II, yielding an advisory guideline range of 10 to 16 months of imprisonment. Mr. Boone accepted the elevated drug quantity even though the toxicology report that evaluated the controlled substances seized in this case denoted a total drug quantity of 44.034 grams based of two items of evidence of 41.235 and 2.799 grams, respectively.

After a careful evaluation of the case, the facts and circumstances of Mr. Boone's participation in the offense conduct that suggests that the conduct in this case was an isolated act, and not part of the overall larger ongoing conspiracy. Without a doubt, considering the evidence disclosed regarding the investigation of this conspiracy case, Eric Boone was a lower level participant. He would respectfully request a sentence reflecting his individualized participation, and a sentence on the lower end of the applicable advisory guideline range.

## IV. FAMILY CIRCUMSTANCES / CIRCUMSTANCES OF OFFENSE

Eric Boone respectfully objects to the Government's characterization of his offense in the family history contained in in the Government's admonishment for his participation in the instant drug-related offense in the beginning of their sentencing memorandum. While it is true that Eric Boone gained custody of his son when he was at the age of ten (10), and that his mother had substance abuse issues at the time, it was through the steadfast efforts of both parents that led to mother's rehabilitation, and Mr. Boone is proud of the efforts mother has made to both improve herself, and to support his son's education, career direction and hobbies. As for Mr. Boone's illegal conduct in this case, he is sincerely repentant, yet the record is bereft of any evidence of the Mr. Boone's selling drugs for a profit.

## V. DRUG AMOUNT REASONABLY ATTRIBUTABLE
## TO THE DEFENDANT

For purposes of criminal conviction, one conspirator can be prosecuted for the reasonably foreseeable criminal conduct of co-conspirators within the scope of the conspiracy. For purposes of sentencing, though, the inclusion of drug weight from other persons' conduct is more restricted. Under Section 1B1.3(a)(1)(B) "[a] district court may sentence a defendant based on the reasonably foreseeable acts and omissions of his co-conspirators that were taken in relation to a conspiracy." *United States v. Getto*, 729 F.3d 221, 234 (2d Cir. 2013). However, to hold a defendant accountable for jointly undertaken criminal activity, a district court must first "make a particularized finding of the scope of the criminal activity agreed upon by the defendant" and, in addition, make a

particularized finding that relevant co-conspirator conduct was foreseeable to the defendant. *Studley*, 47 F.3d at 574.

At sentencing, a district court would commit procedural error by failing to make particularized findings concerning whether certain conduct of other participants, or co-conspirators fell within the scope of defendant's agreement, and whether this conduct was foreseeable to the defendant. If the district court relies on the entirety of the drug amount seized by the government that listed entire drug amount attributed to the conspiracy, the resulting weight would be much greater than that which is forseeable to Mr. Boone. The court should eliminate from the quantity drug amounts attributable to other participants with tenuous connections to the defendant. A determination needs to be made as to what drug amount may be properly attributed to defendant Boone, as foreseeable. The Court's findings must observe the requirement of *Studley* to make particularized findings relating to "the scope of the specific conduct and objectives embraced by the defendant's agreement," *Studley*, 47 F.3d at 574 (quoting U.S.S.G. § 1B1.3, cmt. n. 2) (emphasis omitted), and "as to whether the activity was foreseeable to the defendant," id.

"[T]he scope of conduct for which a defendant can be held accountable under the sentencing guidelines is significantly narrower than the conduct embraced by the law of conspiracy." *Getto*, 729 F.3d at 234 n.11 (internal quotation marks omitted). For the purposes of sentencing, mere "knowledge of another participant's criminal acts" or "of the scope of the overall operation" does not make a defendant criminally responsible and it is less likely that an activity was jointly undertaken if the participants worked independently and did not "pool their profits and resources." See *Studley*, 47 F.3d 569, 575.

The Defendant respectfully submits that the district court must make particularized findings, consistent with *Studley*, relating to the scope of the conspiracy that this defendant agreed to, and the foreseeability weight attributable to him, apart from the weights and activities attributable to by other participants.

The provision of the Guidelines is that in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, **whether or not** charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity. The sentencing judge must make particularized findings.

These differences between Pinkerton liability and the sentencing provision often comes up in drug convictions where the Guidelines turn on quantity. US v. Colon-Solis 354 F. 3d 101, 103 (1st. Cir. 2004) A good discussion of the distinction is found in *United States v. Spotted-Elk*, 548 F.3d 641, 673-677 (8th Cir. 2008), in the context of a withdrawal defense The Guidelines include as relevant conduct in the case of a jointly undertaken criminal activity all (1) "reasonably foreseeable acts and omissions of others" (2) "in furtherance of" (3) "the jointly undertaken criminal activity." USSG § 1B1.3(a)(1)(B). These elements closely correspond to the classic statement of the common law requirements for substantive conspiracy liability. See *Pinkerton v. United States*, 328 U.S. 640, 647-48, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946) ("A different case would arise if the substantive offense committed by one of the conspirators was not in fact done in furtherance of the conspiracy, did not fall within the scope of

the unlawful project, or was merely a part of the ramifications of the plan which could not be reasonably foreseen as a necessary or natural consequence of the unlawful agreement.").

Despite the Pinkertonian language of the guideline, the commentary to USSG § 1B1.3 explains that the concepts of relevant conduct under the Guidelines, on the one hand, and conspiracy liability, on the other, are not the same: "The principles and limits of sentencing accountability under this guideline are not always the same as the principles and limits of criminal liability. . . . [T]he focus [of the Guidelines] is on the specific acts and omissions for which the defendant is to be held accountable in determining the applicable guideline range, rather than on whether the defendant is criminally liable for an offense as a principal, accomplice, or conspirator." USSG § 1B1.3, comment. (n.1). This commentary was added in 1992, USSG App. C, Amendment 439, following criticism that "the relevant conduct section failed to adequately distinguish among conspirators and others involved in 'jointly undertaken activities.'" Roger W. Haines, Jr., et al., Federal Sentencing Guidelines Handbook 133 n.19 (2007-08 ed.).

The commentary to § 1B1.3 shows that while the emphasis in substantive conspiracy liability [*Pinkerton* liability] is the scope of the entire conspiracy and foreseeability in light of that scope, the emphasis under § 1B1.3 is the scope of the individual defendant's undertaking and foreseeability in light of that undertaking, rather than the scope of the conspiracy as a whole: "Because a count may be worded broadly and include the conduct of many participants over a period of time, the scope of the criminal activity jointly undertaken by the defendant . . . is not necessarily the same as

the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant." USSG § 1B1.3, comment. (n.2). This distinction between the scope of the entire conspiracy, for which a defendant may be held accountable under *Pinkerton*, and the scope of the individual defendant's undertaking, for which a defendant may be held accountable under § 1B1.3, was highlighted as a "key point" in a law review article written by the Chairman and General Counsel of the Sentencing Commission in 1990. William W. Wilkins, Jr. and John R. Steer, <u>Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines</u>, 41 S.C.L. Rev. 495, 510 (1990). See generally *United States v. McClatchey*, 316 F.3d 1122, 1127-29 (10th Cir. 2003) (conviction of conspiracy does not make defendant responsible under § 1B1.3 for all reasonably foreseeable bribes paid by his co-conspirators; the bribes must also fall within the scope of the defendant's joint undertaking); *United States v. Soto-Piedra*, 525 F.3d 527, 531-33 (7th Cir.) ("Conspiracy liability . . . is generally much broader than jointly undertaken criminal activity under section 1B1.3. . . . Actions of coconspirators that a particular defendant does not assist or agree to promote are generally not within the scope of that defendant's jointly undertaken activity."), cert. denied, 129 S. Ct. 261, 172 L. Ed. 2d 195 (2008); *United States v. Swiney*, 203 F.3d 397, 404 (6th Cir. 2000) ("[T]he Sentencing Guidelines have modified the *Pinkerton* theory of liability so as to harmonize it with the Guidelines' goal of sentencing a defendant according to the 'seriousness of the actual conduct of the defendant and his accomplices.'") (quoting Wilkins & Steer, supra) (distinguished in *United States v. McIntosh*, 236 F.3d 968, 974 (8th Cir. 2001)); *United States v. Lanni*, 970 F.2d 1092, 1093 (2d Cir. 1992) ("[A]n important distinction exists

between the criminal law standard for convicting a defendant of conspiracy and the Guidelines standard for sentencing a defendant convicted of conspiracy.").

In the application of § 1B1.3 in the specific context of a drug distribution conspiracy, a defendant's conviction for conspiracy does not automatically mean that every conspirator has foreseen the total quantity of drugs involved in the entire conspiracy; in addition to membership in the conspiracy, the district court must find the scope of the individual defendant's commitment to the conspiracy and the foreseeability of particular drug sale amounts from the individual defendant's vantage point. *United States v. Weekly*, 118 F.3d 576, 578-80 (8th Cir.), modified on other grounds, 128 F.3d 1198 (8th Cir. 1997); *United States v. Flores*, 73 F.3d 826, 834 (8th Cir. 1996). A sentence was reversed, in part, because of the district court's blanket assertion that the defendant was responsible for actions of other conspirators that were a part of the conspiracy, unqualified by an analysis of whether the actions were foreseeable to the defendant. *United States v. Delgado-Paz*, 506 F.3d 652, 655 (8th Cir. 2007); accord *United States v. Rogers*, 982 F.2d 1241, 1245-46 (8th Cir. 1993) (remanding for findings regarding whether entire amount of drugs attributable to conspiracy were foreseeable to defendant); *United States v. Anderson*, 243 F.3d 478, 484 (8th Cir. 2001) (district court erred in attributing co-conspirator's drug sales to defendant without any evidence connecting the defendant to the drugs). Another case was affirmed in a case in which two conspirators were held accountable for different amounts of drugs, based on different degrees of involvement in the conspiracy's activities. *United States v. Pruneda*, 518 F.3d 597, 607 (8th Cir. 2008).

Other factors bearing on the scope of the defendant's criminal undertaking and the foreseeability of particular criminal acts include: (1) whether and to what extent the defendant benefitted from his co-conspirators' criminal acts, and (2) whether the defendant showed a substantial level of commitment to the conspiracy. The commentary to § 1B1.3 expressly states that conduct of the other conspirators that occurred before the defendant joined the conspiracy is ordinarily not "relevant conduct," comment. (n.2). A person should not be held responsible for the quantities that occur before he joins, nor after he exits the conspiracy. Mr. Boone's participation in this conspiracy, on all accounts, was for a very limited amount of time based on all credible evidence. Mr. Boone was not involved in the Title III wiretaps in this case. Rather, he was a one time purchaser that had visited a co-conspirator who was the target of an ongoing Federal investigation.

Conspiracy cases often involve complex questions of fact regarding the liability of one conspirator for another. For purposes of trial, conspirator A can be held liable for the overt acts of conspirator B even if A had no actual knowledge of B's acts, as long as B's acts were in furtherance of the conspiracy. But the same does not necessarily hold for purposes of sentencing, and this has led to considerable confusion in the courts.

At trial, we are concerned with liability, at sentencing, we turn to the issue of culpability. Or as the Commission long has noted, "[t]he principles and limits of sentencing accountability . . . are not always the same as the principles and limits of criminal liability." USSG §1B1.3, comment. n.1 (emphasis added). This has nevertheless led to confusion inasmuch as courts often equate trial liability with sentencing accountability.

In drug conspiracies and other quantity-driven conspiracies (g. frauds, robberies, and other quantity based offenses,) the Sentencing Commission now has clarified conspirator A can only be held accountable for the acts of conspirator B where (1) B's acts were within the scope of criminal activity that A agreed to jointly undertake, (2) B's acts were in furtherance of that criminal activity, and (3) B's acts were reasonably foreseeable in connection with that criminal activity. The first criterion, which now has been added to the guidelines, clarifies that within conspiracies, each co-conspirator should only be held accountable for conduct that he actually agreed to jointly undertake with the other conspirators.

### **VI. POST OFFENSE REHABILITATION**

Eric does show great documented improvement in his correctional record, and he has developed future plans for his future rehabilitation. He now demonstrates great rehabilitative potential. He is absolutely committed to sobriety, and to leading an exemplary family life, as a proud and supportive father and a contributing member of society.

Eric has used his time at Wyatt constructively. He has accumulated several certificates, and he has an exemplary record of good conduct at Wyatt. [See exhibit "A"]

Eric now has the understanding of what caused him to offend, he has the courage to admit it, and he has demonstratively accepted full responsibility for his role in the offense, and he has the desire and willpower to remain sober.

Although Eric's life took a wrong path with his substance abuse issues and related criminality, he was able to maintain solid employments and meet educational goals. Eric

looks forward to seeking full time solid employment upon release in a job that will offer him advancement in a career.

**WHEREFORE**, Eric Boone respectfully requests that the quantity calculation be made for the conduct reasonably forseeable to his conduct in this conspiracy, and that the Court consider his limited role in the conspiracy, and his commitment to rehabilitation, as it imposes a sentence that is sufficient, but not greater than necessary..

Respectfully submitted in New London, Connecticut, on November 21, 2017.

s/ Michael R. Hasse
Michael R. Hasse ct12289
Attorney for Eric Boone
89 Hempstead Street
New London, CT 06320
Tel. (860) 444-2711
Fax: (734)448-2891
Email: hasselaw@yahoo.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 21, 2017 a copy of the foregoing Supplemental Sentencing Memorandum on behalf of the defendant, Eric Boone, was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's Electronic Filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF Filing System.

s/ Michael R. Hasse
Michael R. Hasse ct12289